# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 995 | **DATE** | 10/15/2003 |
| **CASE TITLE** | United States of America vs. Miguel Lara-Unzeuta | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due _____ . Reply to answer brief due _____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss the indictment is denied. Status hearing held and continued to November 24, 2003 at 9:30 a.m. Trial date set for 12/2/03 to stand. Joint oral motion to exclude time from 10/15/03 to 11/24/03 is granted. (X-T)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 1 6 2003 | |
| | Notified counsel by telephone. | date docketed | 34 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | OCT 1 6 2003 | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| EF | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
      v. )        Case No. 02 CR 995
)        Honorable Charles R. Norgle
)
MIGUEL LARA-UNZUETA, )
)
        Defendant. )

**DOCKETED**

**OPINION AND ORDER**

OCT 1 6 2003

CHARLES R. NORGLE, District Judge:

Miguel Lara-Unzueta is charged in a single count indictment under 8 U.S.C. § 1326(b)(2)

for illegally re-entering the United States following a lawful order of removal. Lara-Unzueta has

filed a motion to dismiss the indictment, arguing that his due process rights were violated in the

removal proceedings that form the basis of the present charge. For the following reasons, Lara-

Unzueta's Motion to Dismiss the Indictment is denied.

## I. BACKGROUND[1]

Lara-Unzueta is a citizen of Mexico, who initially immigrated to the United States in 1981.

In 1988, his status was changed to temporary resident alien, and in 1990, to permanent resident alien.

On March 1, 1996, an Illinois state court convicted Lara-Unzueta on two counts of attempted

first-degree murder and armed violence. Since Lara-Unzueta was not a citizen of the United States,

his offenses, if determined to fall within the definition of an "aggravated felony" under 8 U.S.C. §

1101(a)(43), would have made him eligible for deportation pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

---

[1] The background information is taken from the parties' pleadings, including attached
exhibits.

34

However, at the time of Lara-Unzueta's convictions, § 212(c) of the Immigration and Naturalization Act ("INA"), codified at 8 U.S.C. § 1182(c) (now repealed), provided that a person subject to deportation, on the basis of having committed an "aggravated felony," could still apply for discretionary relief from deportation if certain requirements were met.

In 1996, while Lara-Unzueta was serving his sentence for the state court convictions, Congress adopted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which in § 440(d) identified the set of offenses for which convictions would preclude relief under § 212(c). See Pub. L. No. 104-132, 110 Stat. 1214, 1277 (1996). This enactment foreclosed § 212(c) relief prospectively for all persons convicted of aggravated felonies. Also § 440(a) of the AEDPA provided that the denial of discretionary relief from deportation for anyone convicted of an aggravated felony was not reviewable by any court. See Pub. L. No. 104-132, 110 Stat. 1214, 1276-77 (1996).

Also in 1996, Congress adopted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which repealed § 212(c) and replaced it with a procedure under which persons who had been convicted of an aggravated felony were ineligible for relief from removal. See Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-597 (1996). Also, the IIRIRA provided that the final removal order for anyone convicted of any aggravated felony was not directly reviewable by any court. See Pub. L. No. 104-208, 110 Stat. 3009-625 (1996).

In January 1997, the Immigration and Naturalization Service ("INS") began removal proceedings against Lara-Unzueta. On August 14, 1997, following multiple continuances to allow Lara-Unzueta to obtain legal representation, an Immigration Judge ("IJ") conducted a removal hearing. During that hearing, Lara-Unzueta's counsel admitted the facts supporting removal, but

2

argued that Lara-Unzueta's underlying convictions were not "aggravated felonies." In addition, counsel for Lara-Unzueta requested a hearing for discretionary relief from removal under § 212(c). The IJ concluded that the underlying convictions of attempted first-degree murder and armed violence were "aggravated felonies," and also rejected the request for discretionary relief from removal under § 212(c). The IJ based his decision to reject the request for discretionary relief from removal under § 212(c) on an interpretation that the AEDPA precluded § 212(c) discretionary relief for aliens removable for commission of an aggravated felony. The IJ advised Lara-Unzueta that he had the right to appeal the decision to the Board of Immigration Appeals ("BIA").

On appeal to the BIA, Lara-Unzueta again argued that the underlying convictions of attempted first-degree murder and armed violence were not "aggravated felonies," and also that he should be given the opportunity for discretionary relief under § 212(c). In Lara-Unzueta's Notice of Appeal, he also stated: "This case should be considered under the law in effect before April 24, 1996." (Gov't Resp. in Opposition to Def.'s Mot. to Dismiss Indictment, Ex. 2.) However, this argument was not presented in the brief to the BIA. On March 30, 1998, the BIA affirmed the IJ's decision that Lara-Unzueta's underlying convictions of attempted first-degree murder and armed violence were "aggravated felonies," and that he was ineligible for discretionary relief under § 212(c) as a result of the change in the law affected by the AEDPA.

Lara-Unzueta did not seek judicial review of the BIA's decision, either by way of appeal to the Seventh Circuit or a writ of habeas corpus under 28 U.S.C. § 2241; and on June 25, 1998, he was removed from the United States to Mexico.

In INS v. St Cyr, 533 U.S. 289 (2001), the Supreme Court clarified the AEDPA and the IIRIRA. The Court held that "§ 212(c) relief remains available for aliens . . . whose convictions were

3

obtained through plea agreements and who, notwithstanding those convictions, would have been

eligible for § 212(c) relief at the time of their plea under the law then in effect." Id. at 326. The

Court also held that "habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA."

Id. at 315. Thus, the Supreme Court's decision in St. Cyr invalidated the decisions of the IJ and BIA,

who rejected Lara-Unzueta's requests for discretionary relief from removal under § 212(c) based on

their interpretations that the AEDPA precluded discretionary relief for aliens removable for the

commission of an "aggravated felony."

On October 3, 2002, Lara-Unzueta was arrested in Broadview, Illinois, by the Chicago Police

Department for armed robbery and attempted armed robbery. Lara-Unzueta was transferred to INS

custody on October 4, 2002. In October 2002, he was charged with violating 8 U.S.C. § 1326(b)(2)

for illegally re-entering the United States following a lawful order of removal without the

authorization of the Attorney General.

## II. DISCUSSION

Section 1326(a) of Title 8 of the United States Code makes it a crime for a deported or

removed alien to enter, attempt to enter, or be found in the United States without the expressed

consent of the Attorney General. To sustain this charge, the government must prove that the

defendant previously had been removed properly, meaning that the underlying removal proceedings

complied with some level of due process. In United States v. Mendoza-Lopez, 481 U.S. 828, 839

(1987), the Supreme Court held that due process requires allowing a defendant to collaterally attack

the underlying deportation order "where the deportation proceeding effectively eliminates the right

of the alien to obtain judicial review" of the deportation. However, the Mendoza-Lopez decision

"did not offer specific guidelines about the minimal due process requirements for a deportation

proceeding." United States v. Roque-Espinoza, 338 F.3d 724, 727 (7th Cir. 2003).

The Seventh Circuit elucidated the Mendoza-Lopez decision stating that in order to collaterally attack a removal proceeding in a § 1326 case, a defendant must show that "the underlying order was the result of a 'deportation hearing [that] effectively foreclosed his right to direct judicial review of the deportation order' and then establish that 'the deportation hearing was fundamentally unfair.'" Id. at 728 (citing United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir. 1994)). The Seventh Circuit deems a deportation hearing to be "fundamentally unfair" if a defendant can show "prejudice," meaning that "relief from deportation" would have been received. See Espinoza-Farlo, 34 F.3d at 471.

In 1996, Congress codified the Mendoza-Lopez decision, and its progeny, in 8 U.S.C. § 1326(d), entitled "Limitation on collateral attack on underlying deportation order." That statute provides a three-step process for collaterally challenging an underlying deportation proceeding:

> In a criminal proceeding under this section, an alien may not challenge the validity
> of the deportation order described in subsection (a)(1) of this section or subsection
> (b) of this section unless the alien demonstrates that--
> (1) the alien exhausted any administrative remedies that may have been available to
> seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived
> the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d)(2003). If the deportation order is successfully challenged collaterally it cannot be used to establish prior deportation.

### III. ANALYSIS

Lara-Unzueta's underlying convictions occurred before the effective date of the AEDPA. Thus, the Supreme Court's decision in St. Cyr invalidated the decisions of the IJ and BIA, who

rejected Lara-Unzueta's requests for discretionary relief from removal under § 212(c) based on their interpretations that the AEDPA precluded discretionary relief for aliens removable for the commission of an "aggravated felony." However, the now erroneous rulings on the IJ and BIA are of no import at this stage. Lara-Unzueta cannot satisfy the three-step process for collaterally challenging his underlying deportation proceedings.

### 1. Exhaustion of Administrative Remedies

In the hearing before the IJ, Lara-Unzueta did not specifically argue that his case should be considered under the law in effect prior to the AEDPA and IIRIRA. Yet, in his Notice of Appeal to the BIA, Lara-Unzueta did state that "[t]his case should be considered under the law in effect before April 24, 1996." However, in his brief to the BIA, this issue was not raised. As such, this would not constitute exhaustion of administrative remedies.

Additionally, Lara-Unzueta does not contend in this Court that raising the issue would have been futile in light of the Attorney General's interpretation of the AEDPA and IIRIRA. See Attorney General Opinion February 21, 1997, 1997 WL 33347804, at n. 4 (instructing that the AEDPA was retroactive, and vacating Matter of Soriano, 21 I & N Dec. 516 (BIA June 27, 1996), which held that the AEDPA would not affect 212(c) applications pending on the effective date of the AEDPA). However, such an argument would not likely succeed in light of the Seventh Circuit's statement in Roque-Espinoza, indicating that futility arguments would likely be unavailing in light of the Supreme Court's decisions in Porter v. Nussle, 534 U.S. 516 (2002) and Booth v. Churner, 532 U.S. 731 (2001). See Roque-Espinoza 34 F.3d at 729.

In the end, however, this Court need not decide whether Lara-Unzueta exhausted his administrative remedies, because he cannot satisfy the other two steps required under § 1326(d).

## 2. *Deprivation of Opportunity for Judicial Review*

The underlying removal proceedings did not deprive Lara-Unzueta of the opportunity for judicial review. Like the defendant in Roque-Espinoza, Lara-Unzueta could have sought a direct appeal to the Seventh Circuit from the decision of the BIA. See Roque-Espinoza, 338 F.3d at 729. In addition, he could have filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See id.; see also St. Cyr, 533 U.S. at 315 (holding that "habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA"). As stated by the Seventh Circuit, "[n]othing prevented [Lara-Unzueta] from playing the role of St. Cyr in his particular situation." Id. "The fact that he chose not to make the attempt does not mean that he was deprived of all avenues of judicial review of his removal order." Id.

In response, Lara-Unzueta argues that "[i]t is counterintuitive to suggest that nothing prevented [him] [from] seek[ing] collateral review and 'play[ing] the role of St. Cyr in his situation.'" (Def.'s Reply to Gov't Opposition to Def.'s Mot. to Dismiss Indictment.) Lara-Unzueta bases this argument on a distinction between himself and St. Cyr, stating that such an argument was unavailing at the time of his deportation and that he could not afford privately retained counsel. However, such an argument was in fact available to Lara-Unzueta at the time of his deportation proceedings. As the Seventh Circuit indicated, "the law would never change if litigants did not request the responsible tribunals to reconsider earlier rulings." Id. Further, the argument that Lara-Unzueta lacked the financial ability to retain private counsel is of no consequence, because while there exists a limited right to counsel in removal proceedings, there is no right to appointed counsel. See 8 U.S.C. § 1362 (stating: "In any removal proceedings . . ., the person concerned shall have the privilege of being represented (*at no expense to the Government*) by such counsel, authorized to

7

practice in such proceedings, as he shall choose")(emphasis added).

### 3. *Fundamental Unfairness*

In addition, the entry of Lara-Unzueta's removal order was not fundamentally unfair. In *dicta*, the Seventh Circuit stated that "it would be hard to show that the loss of a chance at wholly discretionary relief from removal is the kind of deprivation of liberty or property that the due process clause is designed to protect." Roque-Espinoza, 338 F.3d at 729 (relying on United States v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002) and United States v. Wilson, 316 F.3d 506, 510 (4th Cir. 2003)). This court finds that the minimal due process requirements for a removal proceeding do not include a right to discretionary relief under § 212(c). To say that the denial of discretionary relief is fundamentally unfair presents somewhat of an oxymoron. The discretionary relief under § 212(c) is not available as of right, but rather is "an act of extrasovereign generosity," Jean v. Nelson, 727 F.2d 957, 972 (11th Cir. 1984) (en banc). As such discretionary relief under § 212(c) is not a liberty or property interest as contemplated by the Due Process Clause of the Fifth Amendment.

Lara-Unzueta argues that the IJ and BIA's denial of his request for a § 212(c) waiver of deportation hearing, based on their now erroneous interpretations of the AEDPA, renders his removal proceedings fundamentally unfair. Lara-Unzueta argues that it is the denial of the request, and not whether he would have been granted a waiver of deportation, that makes the indictment insufficient. However, this argument misses the issue of prejudice.

In Espinoza-Farlo, the Seventh Circuit expressly rejected the argument that no prejudice need be shown to prevent a deportation order from being used to prove an element of a § 1326 charge. 34 F.3d at 471. The Seventh Circuit interpreted a deportation hearing to be "fundamentally unfair" only if a defendant can show "prejudice," meaning that "relief from deportation" would have been

received. Id. Lara-Unzueta does not argue that he would have received "relief from deportation." As such, he fails to indicate how he was prejudiced, and thus, cannot satisfy the third prong of the inquiry under § 1326(d).

## IV. CONCLUSION

For the reasons stated above, the Court denies Lara-Unzueta's Motion to Dismiss the Indictment.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 10/15/03

9